# Buchanan, Appellant, *v.* Ammerman.

*Executors and administrators—Sale of real estate—Equity.*

Where an administrator files a bill in equity against a committee of a lunatic who had used moneys of the estate to purchase real estate in her own name, and secured a decree in his favor, in which he is also appointed master to sell the real estate in controversy, the administrator may sell the land and execute a good deed therefor, and as against a minor, who through his guardian had full knowledge of the equity proceeding, and of the sale, and stood ready to take his distributive share of the proceeds from the hands of the administrator.

Argued Oct. 29, 1902. Appeal, No. 187, Oct. T., 1902, by plaintiff, from judgment of C. P. Blair Co., March T., 1899,

No. 25, for defendant non obstante veredicto in case of Earl Buchanan, by his Guardian, Frank P. Crissman, v. Frank Ammerman and Annie M. Robesob.   Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER and W. D. PORTER, JJ.   Affirmed.

Ejectment for land in Logan township.

At the trial the court instructed the jury to return a verdict for plaintiff subject to certain questions of law reserved.   Subsequently the court entered judgment for defendants non obstante veredicto.

*Error assigned* was in entering judgment for defendant non obstante veredicto.

*Edmund Shaw*, for appellant.—The real estate of Mr. Lewis could not be sold lawfully by the administrator of his estate, except for the payment of debts, on petition under oath by the administrator to the orphans' court setting forth that the personal estate was insufficient for payment of debts, and that it was necessary to make sale of real estate for that purpose: Spencer v. Jennings, 114 Pa. 618 ; Bennett v. Hayden, 145 Pa. 586; Torrance v. Torrance, 53 Pa. 505.

A man's land cannot be sold in a proceeding against another and he not made a party, and the party applying has no authority to demand a sale : Torrance v. Torrance, 53 Pa. 505 ; Mathews v. Stephenson, 6 Pa. 496 ; Halderman v. Young, 107 Pa. 324; Spencer v. Jennings, 114 Pa. 618; Bennett v. Hayden, 145 Pa. 586.

*D. Clare Good*, with him *J. Banks·Kurtz*, for appellees.—The court of equity having first attached jurisdiction of the subject, it had power to exercise its appropriate functions " when it removes out of the way of the orphans' court " all obstructions which would delay and hinder distribution: Campbell's Appeal, 80 Pa. 298.

OPINION BY WILLIAM W. PORTER, J., November 19, 1902:

An earnest effort has been made to grasp the facts and subject-matter of this controversy from the inadequate paper-books presented   The action is ejectment.   The plaintiff is the guard-

ian of Earl Buchanan, a minor grandchild of Thomas Lewis. Thomas Lewis was adjudged insane in 1888. His wife, Annie M. Lewis (now Mrs. Robeson), was appointed committee. Prior to lunacy Thomas Lewis had applied for a pension. The sum of $1,650 back pension money was paid to Annie M. Lewis, committee. Thomas Lewis died October 25, 1891, without a will, leaving a widow and two children, Nellie Lewis, a minor, and Mabel Lewis, who intermarried with John Buchanan. Mabel Buchanan (née Lewis), died in October, 1892, intestate, leaving a husband and one child, Earl Buchanan, a minor, whose guardian, Crissman, is plaintiff in the present action.

In March, 1894, D. Clare Good, Esq., was appointed administrator of the estate of Thomas Lewis, deceased. He learned that the personal property of the decedent, consisting largely of the pension money above referred to, had been applied by Mrs. Lewis, the committee, to her own use and invested in real estate. He as administrator filed a bill in equity on March 4, 1894, in the common pleas, against Mrs. Robeson (or Lewis). This proceeding seems to have reached a decree whereby it was adjudged that Mrs. Robeson (formerly Mrs. Lewis) should hold the lands described in the bill in trust for the benefit of the estate of Thomas R. Lewis and that she be required to execute a deed of conveyance to the administrator. The decree also appoints D. Clare Good, Esq., master in equity to sell the lands on the terms and in the manner prescribed by the decree. The defendants are purchasers of a part of the lands so sold. Other proceedings are referred to in the paper-books but we have no sufficient light in respect to these to discern whether they affect the question here involved or not. The best we can do under the circumstances is to ascertain if possible the effect of the decree in equity requiring the land (the subject-matter of the controversy) to be sold, since this action in ejectment is based upon the allegations that the land passed to D. Clare Good qua administrator; that he could not sell it without order of the orphans' court, and that the title made by him pursuant to the decree in equity, is no protection to the defendants in this action of ejectment who bought the land at the sale made pursuant to that decree.

It seems that the administrator was, in the equity proceeding, not claiming title to land owned by the decedent. The

bill was to secure the fruits of the wrongful investment of personalty belonging to the decedent. The result of the proceeding was the recovery of those fruits in the form of realty. The court sitting in equity had full grasp of the controversy and of its subject-matter. So far as we can discern from the paperbooks the court in equity, doubtless for sound reason, converted the land into personalty by its order of sale whereby that which passed into the hands of the administrator was not actually or technically land but personalty, the proceeds of the sale of the fruits of the investment of personalty. If the facts are as stated, the conclusion would seem to be that the order of the court directing a sale by a master duly appointed, and confirming the sale when made, should protect the title of a purchaser at such sale even as against a minor grandchild of the decedent, who was not made party to the equity litigation. Many circumstances might have justified the order of sale and until overthrown, the decree must be regarded as a wise and proper exercise of equity power.

Further than this, it appears that after the decree and after the confirmation of the sale the present plaintiff (as guardian of the minor grandchild) made an application to the court to vacate, on the ground that the minor was not a party to the proceedings. This petition appears to have been referred to an examiner whose findings were on exception confirmed. From this confirmation there was no appeal. Among the findings, the appellee tells us in his argument, were the following: " That T. M. Crissman . . . . had knowledge and consulted and was advised in all matters relative to the administration of the estate of Thomas Lewis, deceased, and the proceedings in equity instituted by the administrator, D. C. Good, and was willing and ready to accept the share of his said ward from the estate of the said Thomas Lewis, deceased, at and after the settlement agreed upon by all parties in interest in January, 1897."

Thus it appears that the minor through his guardian had full knowledge of the equity proceedings ; had knowledge of the sale and stood ready to take his distributive share of the proceeds from the hands of the administrator. Furthermore, it appears that the very question which is here attempted to be raised in ejectment was raised by application to the court sitting in equity, which court apparently held the guardian to be estopped

from asserting a title against innocent purchasers for value of the real estate at a judicial sale of which the guardian had knowledge and made no attempt to prevent.

Judgment affirmed.